UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PESTMASTER FRANCHISE NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> JINNY LYNN MATA, et al., <br><br> Defendants. | Case No. 16-cv-07268-EMC <br><br> **ORDER GRANTING DEFENDANT AAAC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** <br><br> Docket No. 19 |

## I. INTRODUCTION

Defendant AAAC Support Services, LLC ("AAAC") moves for an order dismissing it from this case for lack of personal jurisdiction or, in the alternative, to dismiss this action for improper venue or transfer venue to the Southern District of Texas. Docket No. 19 ("Def. Mo."). Plaintiff Pestmaster Franchise Network, Inc. ("Pestmaster") opposes AAAC's motions and seeks leave of court to allow personal jurisdiction discovery. Docket No. 23 ("Pl. Op."). The Court **GRANTS** Defendant AAAC's motion to dismiss for lack of personal jurisdiction and **DENIES** Plaintiff's motion for further jurisdictional discovery for the reasons set forth below.

## II. FACTUAL & PROCEDURAL BACKGROUND

In its first amended complaint ("FAC") and opposition to the motion to dismiss, Plaintiff Pestmaster alleges as follows.

Pestmaster engages in the business of franchising pest control businesses. FAC ¶ 17. When Pestmaster enters into a franchise agreement with a franchisee, the franchisee is given the right to operate a pest control business using Pestmaster's trademarks, trade secrets, and proprietary business methods and techniques within a given geographic territory. FAC ¶ 19.

In April 2007 and again in April 2008, Defendants Jinny and Gabe Mata ("the Matas") entered into two franchise agreements with Pestmaster to operate two Pestmaster franchises in Texas. *See* FAC ¶ 34-35. The franchise agreements include both a forum selection and arbitration clause. *See* Pl. Op., Exhibit B at 29-30. The agreements also provided that, in the event the Matas proposed to sell their franchises, Pestmaster would have a right of first refusal. FAC ¶ 40.

In October 2016, the Matas informed Pestmaster that they intended to sell the two franchises to a third party. FAC ¶ 39. In response, Pestmaster informed the Matas verbally and in writing that it was interested in exercising its Right of First Refusal. FAC ¶ 40. Pestmaster demanded that the Matas provide Pestmaster with a "bona fide, executed written offer to purchase" from the third-party buyer, but the Matas did not do so. FAC ¶¶ 47, 55.

Instead, in December 2016, the Matas closed on the sale of the franchise businesses to Defendants Josie and Brian Moss ("the Mosses") who formed a new entity called Moss Pest Control, LLC. *See* FAC ¶ 57. There is no allegation that the Mosses had any preexisting relationship with the Matas. Plaintiff alleges that the sale by the Matas violated several provisions of the two franchise agreements and Plaintiff's common law and statutory rights. FAC ¶ 61. Plaintiff further alleges that Defendant AAAC, a franchisor in the animal and pest control business that is also owned by the Mosses, aided the various Defendants in the conspiracy to terminate the two franchise agreements prematurely because AAAC knew about the two franchise agreements, but intentionally failed to follow the provisions governing the sale of the franchised business. *See* FAC ¶¶ 92-115; *see also* ¶¶ 135-147.

Pestmaster asserts ten claims against the Defendants, including contract, conspiracy, and fraud claims, as well as claims for violations of federal and state trade secrets and unfair competition laws. Only Defendant AAAC brings this motion to dismiss for lack of personal jurisdiction.

### III. DISCUSSION

A. Personal Jurisdiction Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff has the burden of establishing that jurisdiction is proper.

*See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Where a court does not conduct an evidentiary hearing, and only written materials are presented to the court, a plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss. *See Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1127 (9th Cir. 2010). In deciding whether a prima facie showing has been made, "the court resolves all disputed facts in favor of the plaintiff." *Id*. (internal cites and quotations omitted).

A court's exercise of personal jurisdiction over a non-resident defendant must comport with both the applicable state long arm statute and constitutional principles of due process. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.3d 1280, 1286 (9th Cir. 1977). As the California long-arm statute is coextensive with federal due process, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Due process requires that a defendant have "minimum contacts" with the forum state "such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id*. (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Depending on how numerous or substantial these minimum contacts are, a court may have either general or specific jurisdiction over a non-resident defendant. *See Sher v. Johnson*, 911 F.3d 1357, 1361 (9th Cir. 1990). A party can also consent to a court's jurisdiction through a forum selection clause. *See Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994).

Plaintiff advances two theories to support personal jurisdiction over AAAC. First, Plaintiff asserts that California courts have specific and general personal jurisdiction over AAAC by virtue of AAAC's operation as a franchisor with three California franchisee locations. *Id*. Second, it asserts that AAAC has consented to personal jurisdiction because it is bound as a nonsignatory to the forum selection and arbitration clauses found in the two franchise agreements between the Matas and Pestmaster. *See* Pl. Op. at 2. Neither argument is persuasive.

B. <u>General Jurisdiction</u>

A court may find general personal jurisdiction over a defendant whose contacts with a state are "continuous and systematic" and that "approximate physical presence" in the forum state, even if the action is unrelated to those contacts. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d

3

1218, 1223–24 (9th Cir. 2011). In other words, general jurisdiction is appropriate where a party's "affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "The standard for general jurisdiction is an exacting standard[.]" *Id.* at 1224 (internal cites and quotations omitted). The Supreme Court has emphasized that the "paradigm" fora for general jurisdiction are a corporation's place of incorporation and principal place of business. *See Daimler AG v. Bauman,* 134 S. Ct. 746, 749 (2014). Only in an "exceptional case" will general jurisdiction be available anywhere else. *Id.* at 761 n. 19. "General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n. 20. The Ninth Circuit has interpreted *Daimler* as requiring a comparison between a corporation's ties to the forum state and its operations elsewhere; there is no general jurisdiction where a defendant corporation's "California contacts are minor compared to its other worldwide contacts." *Martinez v. Aero Caribbean,* 764 F.3d 1062, 1070 (9th Cir. 2014) (internal quotes and citations omitted).

Plaintiff argues that AAAC's operation as a non-resident franchisor, economic ties with three California AAAC franchisees, and active recruitment of new franchisees from California are sufficient to render AAAC "at home" in California. *See* Pl. Op. at 20; Fillerup Decl., ¶ 7. This argument is foreclosed by *Daimler*. There, a Daimler subsidiary had multiple California-based facilities and was even "the largest supplier of luxury vehicles to the California market." *Daimler*, 134 S. Ct. at 752. The Supreme Court held that, even assuming those contacts were imputed to Daimler, they would not be sufficient for California courts to exercise general jurisdiction over Daimler because "the same global reach would presumably be available in every other State in which [the subsidiary's] sales are sizable." *Id.* at 761. "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 761−62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

4

Here, the facts supporting general jurisdiction are even less persuasive than those in *Daimler*. Plaintiff can only point to three California AAAC franchisees out of forty-four AAAC franchisees nationwide. *See* Fillerup Decl., Exhibit 5. Thus, AAAC's California contacts are "minor compared to its other worldwide contacts." *Martinez v. Aero Caribbean,* 764 F.3d 1062, 1070 (9th Cir. 2014). There is no indication that California holds any special significance to AAAC as their website does not specifically target California consumers or solicit franchisees from California. *See* Fillerup Decl., Exhibit 5 ("We have offices located from coast to coast[.]"); Exhibit 9 (showing 25 "available markets" in California out of hundreds). Accordingly, regardless of how active a role AAAC plays in managing its California franchisees, exercising general jurisdiction in this case would contradict the Supreme Court's admonishment that a "corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20. Thus, Plaintiff has not met its burden of showing that AAAC is subject to general jurisdiction in California.

C.  Specific Jurisdiction

Nor does the Court have specific personal jurisdiction over Defendant AAAC. "Unlike general jurisdiction, specific jurisdiction is tethered to a relationship between the forum and the claim." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction. First, the non-resident defendant must purposefully direct its activities to the forum; second, the claim must be one which arises out of or relates to the defendant's forum-related activities; and third, the exercise of jurisdiction must comport with fair play and substantial justice*, i.e.* it must be reasonable. *See Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. If the plaintiff fails to satisfy any of these prongs, personal jurisdiction is not established in the forum state. *Id*. Here, Plaintiff cannot satisfy the first and second prongs.

The first "purposeful availment" prong involves a determination as to whether "defendant's conduct and connection with the forum State are such that it should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 297 (1980). The defendant may not be haled into the jurisdiction through fortuitous contacts or by the unilateral activity of another party. *Id*.

The second prong demands that the claim arise out of the defendant's forum-related activities. *Id*. In *Walden*, the Court emphasized that "it is the defendant, *not the plaintiff or third parties,* who must create contacts with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014) (emphasis added). And the effect of the defendant's conduct must be "tethered to" the state, not to the plaintiff. *Id*. at 1125. In determining whether Plaintiff's claims arise out of forum related activity, the Ninth Circuit follows the "but for" test. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). Hence, Plaintiff must show that it would not have suffered an injury "but for" AAAC's forum related conduct. *See id*.

Though Plaintiff argues for specific personal jurisdiction based on AAAC's franchisee contacts in California, Plaintiff has not sufficiently shown how these contacts relate to the claims now in dispute. In other words, Plaintiff has failed to show that it would not have suffered the harms claimed in this dispute "but for" AAAC's contacts in California, as required by the Ninth Circuit. *See Myers,* 238 F.3d at 1075; *cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). On the contrary, all of the assets which Plaintiff alleges were improperly sold and used were situated in Texas. FAC ¶¶ 4-6. The Asset Purchase Agreement between the Matas and Moss Pest Control, LLC was executed in Texas. *See* Fillerup Decl., Exhibit 12. Even the primary "harm" of the alleged breach of the two franchise agreements – that Pestmaster has lost market share in the two Texas territories – is a harm that is specific to Texas. *See* FAC ¶ 56. Moreover, any harm that Plaintiff's California offices or its franchise system as a whole might have suffered is only remotely and indirectly related to AAAC's alleged conduct. *See Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) ("[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." (internal quotes and citations omitted)). In *Walden*, the Supreme Court held that mere foreseeable harm to

6

plaintiffs' contacts in the forum state is not enough to establish jurisdiction over defendant. Thus, because Plaintiff's claims do not arise out of AAAC's California-related activities, specific personal jurisdiction over AAAC is not warranted. *See Schwarzenegger*, 374 F.3d at 802.

D. <u>Consent to Personal Jurisdiction</u>

Plaintiff next argues that Defendant AAAC has "consented" to personal jurisdiction because it is bound as a nonsignatory to the forum selection clause of the two franchise agreements between Pestmaster and the Matas.[1] If the Court finds that AAAC is a bound nonsignatory to these clauses, the Court need not find general or specific jurisdiction because forum selection clauses are generally given controlling weight. *See O'Keeffe's Inc.*, No. 15-CV-03115-EMC, 2015 WL 6089418, at *1.

The Ninth Circuit has held that a court may enforce a forum selection clause against a nonsignatory to a contract where "the alleged conduct of the non-parties is closely related to the contractual relationship." *Manetti-Farrow, Inc.* v. *Gucci America, Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 454 (9th Cir. 2007).

In *Manetti-Farrow*, the Ninth Circuit held that a variety of nonsignatory corporate defendants would be bound to a forum selection clause, even though the signatory plaintiff only had a contract with one defendant. *See* 858 F.2d at 510. In that case, plaintiff Manetti-Farrow had entered into an exclusive dealership agreement with defendant Gucci Parfums. *See id.* The

---

[1] Plaintiff also argues that AAAC has automatically consented to personal jurisdiction by operating as a non-resident franchisor under California franchise laws. *See* California Franchise Investment Law ("CFIL") (Cal. Corp. Code § 31000 *et seq.*); California Franchise Relations Act ("CFRA") (Cal. Bus. & Prof. Code § 20000 *et seq.*). This argument is without merit. California courts have made clear that California franchise laws alone do not provide a basis for a court in California to exercise personal jurisdiction over a nonresident. *See Thomson v. Anderson*, 113 Cal. App. 4th 258, 269 (2003) (holding that Section 31420 of the CFIL is "a service of process statute and does not create an independent basis for exercise of jurisdiction."); *see also Burgo v. Lady of Am. Franchise Corp.*, No. SA CV 05-0518 DOC, 2006 WL 6642172, at *6 (C.D. Cal. May 4, 2006) (citing *Thomson* and finding § 31420 of CFIL did not create an independent basis for personal jurisdiction over non-resident CEO); *see also Bradley v. Harris Research, Inc.*, 275 F.3d 884, 890 (9th Cir. 2001) (finding that Section 20040.5 of the CFRA is preempted by the Federal Arbitration Act to the extent the CFRA purports to restrict venue outside California any claim relating to franchise operating in state).

contract included a forum selection clause designating Florence, Italy as the forum for resolving disputes. *Id*. The plaintiff later brought claims in the Northern District of California against Gucci Parfums and several different nonsignatory Gucci entities. These nonsignatory Gucci defendants were involved in some way in ratifying or executing the contract between the signatories.[2] *Id.* at 511. The Ninth Circuit held that the forum selection clause applied to all signatory and nonsignatory defendants, even though only defendant Gucci Parfums signed the exclusive dealership agreement, because where "the alleged conduct of the non-parties is so closely related to the contractual relationship", "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Id.* at 514 n. 5 (citation omitted).

In *Holland America*, the Ninth Circuit again bound two nonsignatory defendants to a forum selection clause. 485 F.3d at 454. There, the plaintiff, Holland-America, entered into a contract with Bureau Veritas pursuant to which Bureau Veritas conducted surveys of the plaintiff's cruise ships. The contract designated Nanterre, France as the forum for resolving disputes. *Id*. at 455. After an accident that caused severe damage to one of its ships, the plaintiff brought suit in the Western District of Washington against Bureau Veritas and several entities, including BVNA and BV Canada, who were not parties to the contract and were separate corporations, but who performed ship surveys in the United States and Canada. *Id*. The plaintiff alleged that the combined failure of all of the defendants to conduct adequate surveys caused the accident and the resulting loss of the ship. *Id.* The Ninth Circuit pointed out in a footnote that while Bureau Veritas, BVNA, BV Canada, were separate entities, "the record reflects that one of the few things upon which the parties agree is that Holland America's relationship with BV Canada and BVNA *arose out of and was intimately related to* its relationship with Bureau Veritas." *Id*. at 456 n. 2 (emphasis added). Under these facts, the Ninth Circuit held that the

---

[2] More specifically, nonsignatory defendant Guccio Gucci owned 80 percent of signatory defendant Gucci Parfums, nonsignatory defendant Gucci America twice entered into a Consent and Ratification Agreement consenting to the forum-selection containing contracts between Gucci Parfums and Manetti-Farrow, and three nonsignatory individual defendants were all directors of various Gucci enterprises. *See Manetti-Farrow*, 858 F.2d at 510-11.

8

forum selection clause requiring adjudication in France applied to claims against BVNA and BV Canada "because any transactions between those entities and Holland America took place as part of the larger contractual relationship between Holland America and Bureau Veritas." *Id*. at 456.

In both *Manetti-Farrow* and *Holland America*, the bound nonsignatory defendants had "consented" to the forum selection clause because the nonsignatories were intimately involved in the ratification or execution of the contract containing the forum selection clause. *See also Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 201703, at *7 (N.D. Cal. Jan. 18, 2017) (binding two nonsignatory defendants to a forum selection clause where one nonsignatory defendant had personally negotiated and signed the contract on behalf of a signatory and the other nonsignatory defendant was paid commissions to carry out the contract on behalf of the signatory plaintiff).

In this case, however, unlike in *Manetti-Farrow* and *Holland America*, there is no allegation AAAC played any role in the formation or execution of the two franchise agreements. Whereas in those cases, the nonsignatory parties were intimately involved in the formation and execution of the contracts, and thus were effectively on notice of the forum selection clauses contained in the contracts, here AAAC had no relationship with the formation and execution of the franchise agreement. There was no preexisting relationship between AAAC and either party to the agreement; it was not involved in the execution or performance of the agreement. Moreover, in both *Manetti-Farrow* and *Holland America*, nonsignatory *defendants* sought to enforce a forum selection clause against a signatory *plaintiff*. *See also Meras Engineering, Inc. v. CH2O, Inc*., No. C-11-0389 EMC, 2013 WL 146341, at *11 (N.D. Cal. Jan. 14, 2013) (binding a nonsignatory plaintiff employer to forum selection clause after nonsignatory plaintiff employer and signatory employees filed a suit to declare void certain non-compete clauses in employees' employment contracts with former employer). Thus, in those cases it could not be said that the nonsignatory defendant were unfairly subject to jurisdiction without "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotes and citations omitted). Here, by contrast, AAAC has done nothing to indicate that it expects or is willing to be haled into Court in California.

9

In sum, none of Plaintiff's proposed bases for jurisdiction are applicable.[3] The court therefore **GRANTS** AAAC's motion to dismiss for lack of personal jurisdiction. Because the Court grants the motion on that basis, it does not reach AAAC's motion to transfer venue.

E. <u>Jurisdictional Discovery</u>

Discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *See Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). However, it is within the district court's discretion to deny discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977). Here, though the parties may dispute what theories of personal jurisdiction should apply, there are no outstanding jurisdictional facts in dispute and further jurisdictional discovery is unlikely to further Plaintiff's jurisdictional argument.

///
///
///
///
///
///

---

[3] Relatedly, Plaintiff's argument that AAAC has consented to personal jurisdiction because it is bound as a non-signatory to the arbitration clause is also without merit. The Ninth Circuit has left open the question of whether consent to an arbitration clause constitutes consent to personal jurisdiction in that state. *See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893–94 (9th Cir. 1996). By and large, those circuits that have held that consent to an arbitration clause constitutes consent to personal jurisdiction in that forum have done so only for the limited purpose of enforcing the arbitration agreement itself. *See Armstrong v. Assocs. Int'l Holdings Corp.,* 242 F. App'x 955, 957 (5th Cir. 2007); *see also Doctor's Assocs., Inc. v. Stuart,* 85 F.3d 975, 979 (2d Cir. 1996); *but see Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (finding personal jurisdiction in an action that went beyond an motion to enforce an arbitration agreement or award). Here, Plaintiff asks this Court to make a further interpretive leap. It asks the Court to not only find personal jurisdiction over AAAC based on an arbitration agreement, which is unsettled law in the Ninth Circuit, but also to impose this rule on a *nonsignatory* to that contract. The Court declines to do so for the reasons discussed with respect to the forum selection clauses. There is no basis for finding consent and jurisdiction.

10

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss for lack of personal jurisdiction and **DENIES** Plaintiff's motion for further jurisdictional discovery. Plaintiff is instructed to (1) serve this order on all parties who are not registered ECF e-filers, and (2) file a Certificate/Proof of Service with the Court within three (3) days of serving this order on those parties.

This order disposes of Docket No. 19.

**IT IS SO ORDERED**.

Dated: May 11, 2017

_____
EDWARD M. CHEN
United States District Judge